**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **PAMELA MARIE DESOTO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:14cv0822** |
| | ) | |
| **BOARD OF PARKS AND** | ) | **Judge Nixon** |
| **RECREATION et al.,** | ) | **Magistrate Judge Griffin** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## METROPOLITAN GOVERNMENT'S PARTIAL MOTION TO DISMISS

Defendant, the Metropolitan Government of Nashville and Davidson County ("Metropolitan Government") moves to dismiss a  number of Plaintiff's federal and state law claims set forth in the Amended Complaint (Doc. No. 11). Plaintiff's First Amendment, Fourteenth Amendment, "constructive discharge," and conspiracy claims brought pursuant to 42 U.S.C. § 1983 ("Section 1983") should be dismissed for a number of reasons: (1) Plaintiff has not alleged any facts to support a finding that constitutional violations in this case resulted from a custom, policy, or practice of the Metropolitan Government; (2)  Plaintiff failed to allege facts to support the elements of her First Amendment and "right to privacy" claims; and (3) Plaintiff has not alleged the purported conspiracy with the requisite specificity. Second, Plaintiff's age discrimination claim brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621, *et seq.*, should be dismissed because the only alleged act of age discrimination is a promotion that someone older than DeSoto received. Because Plaintiff's Tennessee Human Rights Act ("THRA"), TENN. CODE ANN. §§ 41-21-40, *et seq.* claim alleging age discrimination utilizes the same standard as the ADEA, the age discrimination

portion of that claim should be dismissed on these grounds as well. Finally, Plaintiff's claim alleging violation of the Computer Fraud and Abuse Act of 1986 ("CFAA"), as amended, 18 U.S.C. §§ 1030, *et seq.*, should be dismissed because Plaintiff satisifies none of the statutory elements of such a claim.

Many of Plaintiff's state-law claims should be dismissed as well. First, the Metropolitan Government has not waived its immunity for intentional infliction of emotional distress or negligent infliction of emotional distress arising out of civil rights. Second, Plaintiff's claim under Metro Code of Ordinances § 11.20.130 should be dismissed because that ordinance does not create a private right of action. Third, Plaintiff's litany of claims under the Tennessee Constitution should be dismissed because she has no private right of action for damages under the Tennessee Constitution. Finally, Plaintiff's claim alleging violation of the Tennessee Personal and Commercial Computer Act of 2003 ("TPCCA"), as amended, TENN. CODE ANN. §§ 39-14-601, *et seq.*, should be dismissed because there is no cause of action available to Plaintiff under that statute, and she has not alleged facts to support a violation of any of its provisions.

## I.      FACTUAL ALLEGATIONS

The following allegations are drawn from Plaintiff's Amended Complaint (Doc. No. 11):

Plaintiff Pamela Marie DeSoto was hired in 1982 by the Metro Parks Police ("Parks Police"), a Division of the Metropolitan Government's Parks and Recreation Department ("Parks Department"). (Am. Compl. ¶ 12.) In early 2013, DeSoto decided to apply for a lieutenant position, which was scheduled for posting in July 2013. (*Id.* ¶ 14.) DeSoto alleges that she "had an impeccable work record without any significant reprimands." (*Id.*)

On May 2, 2013, DeSoto was "de-commissioned" as a sergeant by Parks Police Captain Chris Taylor. (Am. Compl. ¶ 15.) As a result, DeSoto was no longer a viable candidate for the

2

vacant lieutenant's position. (*Id.*) DeSoto alleges that her "'de-commissioning' was the result of Parks Police's ongoing discrimination against DeSoto based on her sexual orientation, gender, race, and age." (*Id.*) Following the de-commissioning, Tommy Lynch, the Director of the Parks Department, sent DeSoto a letter outlining several charges against her: (1) deficient or insufficient performance of duties, (2) insubordination toward the supervisor, (3) violation of written rules, policies, or procedures, and (4) dishonesty. (*Id.*) Captain Taylor and Director Lynch recommended termination as a result of the charges. (*Id.*)

DeSoto requested a departmental hearing to challenge the charges against her. (Am. Compl. ¶ 17.) The hearing panel reversed the "dishonesty" violation and recommended that DeSoto be suspended for 20 days without pay and demoted from sergeant to officer with a commensurate reduction in salary. (*Id.*) That decision is on appeal to the Metro Civil Service Commission. (*Id.*) According to DeSoto, after the departmental hearing, Captain Taylor and Sgt. Kevin Hooper cleaned out DeSoto's office and "purged" many of her personal documents that she contends "documented ongoing discrimination at Parks Police." (*Id.* ¶ 18.)

Plaintiff further alleges that she was later re-commissioned and permitted to participate in the selection process for the vacant lieutenant position in Parks Police. (Am. Compl. ¶ 22.) DeSoto alleges that Sgt. Irvin, a white male younger than DeSoto, was "being groomed to become the next lieutenant," but then concedes that the individual selected for the position, Houston Taylor, is older than her. (*Id.* ¶¶ 22-24.)

Plaintiff alleges various claims against a litany of individuals and the Metropolitan Government. As to the Metropolitan Government, Plaintiff attempts to assert First Amendment and Fourteenth Amendment ("right to privacy" and equal protection), "constructive discharge," and conspiracy claims pursuant to Section 1983; "freedom of speech," "freedom of assembly,"

3

and "right to privacy" claims under the Tennessee Constitution; race, gender, and age discrimination claims under the THRA; an age discrimination claim under the ADEA; race and gender claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e; retaliation claims under the THRA, Title VII, and ADEA; race, gender, age, and sexual orientation discrimination claims under Metro Code Section 11.20.130; a "constructive discharge" claim under state law; state law claims for intentional and negligent infliction of emotional distress; and state and federal law claims alleging unauthorized access to a cell phone under the TPCCA and CFAA, respectively.[1]

## II.    APPLICABLE STANDARD

When ruling on a defendant's motion to dismiss, this Court "construe[s] the complaint liberally in the Plaintiffs' favor and accept[s] as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). Regardless of the outlandishness or lack of independent support for a complaint's factual assertions, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.").

Under the standard articulated in *Bell Atlantic Corp. v. Twombly*, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss. 550 U.S. at 570. Furthermore, the Supreme Court reaffirmed and

---

[1] Despite the quantity of Defendants in this case, the majority of the separate causes of action listed in Plaintiff's amended complaint do not identify **specific** individuals or entities against whom the particular claims are alleged. Rather, a large portion of the causes of action in the amended complaint proceed against unspecified "Defendants" or specific named Defendants prefaced by qualifying language such as "not limited to." Thus, out of an abundance of caution, this motion assumes that any claim asserted against "Defendants" or utilizing such qualifying language is proceeding against the Metropolitan Government.

4

clarified *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Iqbal*, the Court stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). And "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.  LEGAL ANALYSIS

Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted for the majority of Plaintiff's claims. First, Plaintiff's constitutional, "constructive discharge," and conspiracy claims proceeding under Section 1983; age discrimination claim under the ADEA (and the co-extensive THRA claim for age discrimination); and CFAA claims should be dismissed. Second, Plaintiff's state law claims for intentional and negligent infliction of emotional distress, "constructive discharge," violation of Metro Code Section 11.20.130, and violation of the TPCCA should be dismissed.

### A.  A NUMBER OF PLAINTIFF'S FEDERAL CLAIMS SHOULD BE DISMISSED.

#### 1.  *Plaintiff Has Not Alleged a Metro Custom, Policy, or Practice That Was the "Moving Force" Behind any Purported Constitutional Violation.*

Section 1983 serves as a means through which plaintiffs can allege violations of constitutional rights or other federal law against municipalities. Section 1983, however, will not support a claim against a municipality based upon a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Rather, a municipality may be held

5

liable "only for the adoption of a 'policy or custom' that violates federally protected rights." *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005); *see also Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819 (6th Cir. 2007). More specifically, a plaintiff must show that (1) a municipal policy exists, and (2) the policy was the moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Plaintiff has alleged no facts to support a finding that a custom, policy, or practice of the Metropolitan Government was the "moving force" behind any purported violation of federal rights in this case. Rather, Plaintiff merely alleges certain acts by various individuals employed by the Metropolitan Government. But as outlined above, Section 1983 claims may not be based upon a *respondeat superior* theory of liability. Accordingly, Plaintiff's Section 1983 claims alleging violation of her First and Fourteenth Amendment rights[2] should be dismissed.

Likewise, Plaintiff's conclusory claim titled "Constructive Discharge and 42 U.S.C. § 1983" (Am. Compl. ¶¶ 56-57) must be dismissed. Because Plaintiff has failed to allege facts concerning a purported custom, policy, or practice of the Metropolitan Government that caused any violation, the "constructive discharge" claim based in Section 1983 should be dismissed.

## 2. *Two of Plaintiff's Constitutional Claims Fail for Other Independent Reasons, As Well.*

### a. First Amendment.

Plaintiff next alleges First Amendment claims concerning her "freedom of speech" and "freedom of association." The U.S. Supreme Court has held that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public

---

[2] Plaintiff also asserts a Fourth Amendment claim against specific individuals but does not assert that claim against the Metropolitan Government specifically or "Defendants" collectively. (Am. Compl. ¶¶ 63-64.)

6

agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983). In fact, while the courts' "responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government[,] this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State." *Id.* To that end, courts examining public employee speech must "seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* at 142 (citing *Pickering v. Bd. of Educ. of Township High Sch. Distr. 205*, 391 U.S. 563, 568 (1968)).

A court reviewing the First Amendment claim of a public employee must also examine whether the speech at issue involved a matter of public concern. In *Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004), the Sixth Circuit explained that "[s]peech is of 'public concern' if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Id.* at 590. The Sixth Circuit has explicitly stated that the *Pickering* balancing test described above and "public concern" requirement apply to cases like this one in which a public employee challenges a prior restraint on speech (rather than the consequences of speech, as in a retaliation claim). *Id.* (citing *Jackson v. City of Columbus*, 194 F.3d 737, 746 (6th Cir. 1999), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

While Plaintiff's Amended Complaint provides little detail about any speech in which she attempted or wished to engage, nothing in the Amended Complaint supports an inference that any such speech touched on a matter of "public concern."[3] Instead, Plaintiff alleges only that she

---

[3] The Sixth Circuit "has distilled the 'public concern' test by stating that the court must determine: the 'focus' of the speech; 'the point of the speech in question'; 'to what purpose the employee spoke'; 'the intent of the speech'; or

7

was precluded from "openly discussing her sexuality," (Am. Compl. ¶ 26), which is indisputably a purely personal matter. Moreover, even if it touched in part on a matter of public concern, under the *Pickering* balancing test, a government employer "promot[es] the efficiency of the public services it performs through its employees" when it prohibits any employee from discussing private matters, like sexuality, in the workplace. *Pickering*, 391 U.S. at 568. For each of these reasons, DeSoto's "freedom of speech" claim should be dismissed.

Plaintiff also asserts a claim alleging infringement on her "freedom of association." But Plaintiff's vague and barebones allegations render the analysis difficult. To explain, if Plaintiff is asserting a claim concerning her "freedom of intimate association," that is, a claim concerning "her choices to enter into and maintain certain intimate human relationships," then that claim is more aptly categorized as a due process claim. *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). In that event, her First Amendment "freedom of association" claim should be dismissed.

If, on the other hand, Plaintiff is asserting a "freedom of expressive association" claim, then that claim fails on its merits. Such a claim recognizes the "right to associate ***for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion***." *Id.* (emphasis added). Plaintiff alleges no facts to support such a claim in this case or even to suggest that is what she attempts to assert by way of a "freedom of association" claim.

Regardless of which category this claim fits into, however, Plaintiff fails to state a viable "freedom of association" claim. Plaintiff alleges virtually no facts, indeed not even a full

---

'the communicative purpose of the speaker.'" *Farhat*, 370 F.3d at 592. Because Plaintiff's Amended Complaint lacks detail about the speech purportedly at issue, the court cannot thoroughly analyze all of these points. Nevertheless, the Plaintiff is the master of her own complaint, and the detail that she does provide—"Sgt. DeSoto was prohibited from openly discussing her sexuality" (Am. Compl. ¶ 26)—makes clear that the speech involved a highly personal topic specific to DeSoto herself.

8

sentence, to support this claim. Instead, she states only in a conclusory fashion that she was not permitted to "associat[e] with other homosexuals, including her same sex partner." (Am. Compl. ¶ 26.) This vague allegation does not meet even the most basic pleading standards under *Twombly* and *Iqbal* and should be dismissed for this reason as well.

### b. Right to Privacy.

DeSoto also brings a substantive due process claim against "Defendants," alleging that she has a fundamental right to privacy in her sexual orientation. DeSoto claims that Defendants violated that right to privacy by discriminating against her based on her sexual orientation. (Am. Compl. ¶ 30.)

As an initial matter, it is well-settled that if a claim is cognizable under a particular Amendment of the United States Constitution, it should be brought directly thereunder rather than under the more generalized notion of "substantive due process." *Albright v. Oliver*, 510 U.S. 266 (1994); *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). DeSoto's claim that she was "discriminated against" because of her sexual orientation can be, and indeed has been, brought directly under the Equal Protection Clause in another "count" of her Amended Complaint. Thus, her "substantive due process right to privacy claim" based on alleged discrimination should be dismissed. *See Dvorak v. Wright State Univ.*, 1997 U.S. Dist. LEXIS 23804, at *51-*52 (S.D. Ohio Sept. 2, 1997) (noting that the plaintiff's claim in her right to freedom from discrimination and harassment based on sexual orientation could be brought under the Equal Protection Clause of the Fourteenth Amendment and, thus, was precluded by *Albright*) (copy attached).

9

Further, even assuming for purposes of the present motion that DeSoto has some actionable right to privacy related to her sexual orientation, there are no well-pleaded facts establishing that any Metropolitan Government employee violated that right. Typically, alleged violations of a person's right to privacy in his or her sexual orientation involve the forced disclosure of such information under circumstances where the person did not want it disclosed. *Sterling v. Borough of Minersville*, 232 F.3d 190, 196 n.4 (3d Cir. 2000) ("While we have not previously confronted whether forced disclosure of one's sexual orientation would be protected by the right to privacy, we agree with other courts concluding that such information is intrinsically private."); *Price v. TJX Cos.*, 2012 U.S. Dist. LEXIS 78666 (E.D. Ky. June 5, 2012) (finding that an employee did not state an invasion of privacy claim in the absence of alleging that the employee had chosen to keep his sexual orientation private and had nonetheless been "outed" by his employer) (copy attached).

Here, there is no allegation that DeSoto wished to keep her sexual orientation private. Rather, the Amended Complaint suggests that Desoto wanted to discuss her sexual orientation openly yet was discouraged from doing so. (Am. Compl. ¶ 26.) In addition, DeSoto does not allege that any Metropolitan Government employee disclosed, or forced DeSoto to disclose, her sexual orientation. At bottom, "discrimination" based on sexual orientation does not constitute a forced disclosure of a private matter that might implicate DeSoto's privacy rights. Therefore, her substantive due process claim should be dismissed.

3. ***Plaintiff Has Not Alleged a Purported Conspiracy With Any Requisite Specificity, Nor Can Metropolitan Government Employees Conspire With One Another.***

The Sixth Circuit set forth the standard for proving a Section 1983 conspiracy claim in *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). Specifically, "[a] civil conspiracy is an agreement

between two or more persons to injure another by unlawful action." *Id.* at 943-44. Additionally, "[e]xpress agreement among all the conspirators is not necessary to find the existence of a civil conspiracy," and "[e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id.* at 944. On the other hand, the plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.*

Importantly, "'[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)), *quoted in Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009)). By way of example, vaguely asserting that Defendants "conspired," "planned," or "participated" in an action, were present on a scene, or communicated in furtherance of a conspiracy, standing alone, are all insufficient to establish a civil conspiracy. *Ctr. for Bio-Ethical Reform*, 477 F.3d at 832; *Rodriguez v. Widener Univ.*, 2013 U.S. Dist. LEXIS 84910, at *14-*15 (E.D. Penn. June 13, 2013) (copy attached); *Lee v. Fed. Bureau of Prisons*, No. 99-3293-JWL, 2001 U.S. Dist. LEXIS 1107, at *6 (D. Kan Jan. 29, 2001) (copy attached); *Hinds County v. Wachovia Bank, N.A.*, No. 08 Civ. 2516, 2009 U.S. Dist. LEXIS 130721, at *44 (S.D. N.Y. Apr. 30, 2009) (copy attached); *Winburn v. Valone*, No. 07-CV-14714, 2008 U.S. Dist. LEXIS 67949, at *16 (E.D. Mich. Sept. 5, 2008) (copy attached); *BPNC Inc. v. Taft*, 2003 U.S. Dist. LEXIS 10702, at *11 (N.D. Ohio June 18, 2003) (copy attached). Moreover, the Sixth Circuit has found a conspiracy claim deficient where the plaintiff merely alleged "conclusory statements that, by 'acts and omissions, and policies,

11

practices, and/or customs, engaged in under the color of state law, Defendants have conspired to unconstitutionally deprive Plaintiffs of their right[s] . . . guaranteed under the First Amendment,' and 'that Defendants agreed to and engaged in overt acts that did unlawfully and unreasonably threaten Plaintiffs with criminal action . . . because of their First Amendment activities.'" *Faith Baptist Church v. Waterford Twp.*, 522 Fed. App. 322, 329 (6th Cir. 2013) (quoting the *Faith Baptist* complaint)).

Plaintiff's Amended Complaint fails to meet the standard for pleading a conspiracy claim under Section 1983 and is strikingly similar to the complaint deemed insufficient in *Faith Baptist*. The Amended Complaint makes two conclusory assertions: (1) that "Defendants conspired to deprive Sgt. DeSoto of her constitutional rights under the First Amendment, the Due Process Clause, the Fourth Amendment, and the Fourteenth Amendment of the United States Constitution and Article I, Sections 7, 19, 23 and the right to privacy under the Constitution of the State of Tennessee based upon her sexual orientation, gender, race, and age as applied to the Defendants pursuant to 42 U.S.C. § 1983" and (2) that "[a]t least one of the Defendants engaged in an overt act in furtherance of the conspiracy" that "injured DeSoto." (Am. Compl. ¶ 59.) Beyond these vague and conclusory factual allegations, the complaint does not address Plaintiff's conspiracy claim at all. Such conclusory "allegations" do not state a claim under *Iqbal*, much less under the law in this Circuit requiring conspiracy claims to be pleaded specifically. Accordingly, Plaintiff's Section 1983 conspiracy claim should be dismissed.

Additionally, under the "intra-corporate conspiracy" doctrine, "'[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991) (quoting *Nelson Radio & Supply Co.,*

12

*Inc. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). To that end, the Sixth Circuit "has adopted the general rule in civil conspiracy cases [brought pursuant to Section 1985] that a corporation cannot conspire with its own agents or employees." *Id.* At least one federal circuit has barred Section 1983 conspiracy claims based on the intra-corporate conspiracy doctrine. *E.g.*, *Tillman v. Orange County*, 519 Fed. App. 632, 636 (11th Cir. 2013).[4]

Aside from the pleading deficiency described above, this Court should hold that the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claim, as well. The weight of authority outlined herein, including authority arising in at least one federal district in the State of Tennessee, supports application of the intra-corporate conspiracy doctrine to Section 1983 conspiracy claims. Consequently, Plaintiff's Section 1983 conspiracy claim should be dismissed for this independent reason, as well.

### 4. Plaintiff's ADEA Claim Fails Because She Has Not Alleged That She Was Subjected to an Adverse Employment Action for Which a Younger Employee Was Treated More Favorably.

To succeed on her ADEA claim, DeSoto must plead and prove the following: "(1) [s]he was a member of a protected class; (2) [s]he was subject to an adverse employment action; (3) [s]he was qualified for the position held; and (4) [s]he was replaced by a younger worker. *Hale v. ABF Freight Sys.*, 503 Fed. App. 323, 333 (6th Cir. 2012) (citing *Tuttle v. Metro. Gov't of Nashville & Davidson County*, 474 F.3d 307, 317 (6th Cir. 2007)). Age discrimination claims

---

[4] Although the Sixth Circuit has discussed the intra-corporate conspiracy doctrine only in the context of Section 1985 conspiracy claims, e.g., id., there is a split of authority among district courts within the Sixth Circuit as to whether the doctrine applies in the context of a Section 1983 conspiracy, as well. *Compare Adcock v. City of Memphis*, 2007 U.S. Dist. LEXIS 22156, at *4-*5 (W.D. Tenn. Mar. 13, 2007) (holding that intracorporate conspiracy doctrine barred Section 1983 conspiracy claim) (copy attached); *Audio Visual Equip. & Supplies, Inc. v. County of Wayne*, 2007 U.S. Dist. LEXIS 86941, at *15 (E.D. Mich. Nov. 27, 2007) (same) (copy attached); *Turner v. Viviano*, 2005 U.S. Dist. LEXIS 35119, at *13 (E.D. Mich. July 15, 2005) (same) (copy attached), *with Hopkins v. Canton City Bd. of Educ.*, 2010 U.S. Dist. LEXIS 63183, at n.8 (N.D. Ohio June 23, 2010) (finding it "questionable" whether the intracorporate conspiracy "doctrine extends beyond § 1985 to other types of conspiracy) (copy attached); *Kinkus v. Village of Yorkville*, 476 F. Supp. 2d 829, 838-41 (S.D. Ohio 2007) (holding that intracorporate conspiracy doctrine did not bar Section 1983 conspiracy claim, rev'd on other grounds, 289 Fed. App. 86, 89 n.4 (6th Cir. 2008).

13

under the THRA are analyzed under the same standard. *Brennan v. Tractor Supply Co.*, 237 Fed. App. 9, 15-16 (6th Cir. 2007) (citing *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001); *Anthony v. BTR Automotive Sealing Sys.*, 339 F.3d 506, 514 (6th Cir. 2003)). Thus, Plaintiff's age discrimination claims under both statutes may be analyzed together.

The sections of Plaintiff's Amended Complaint outlining her "Causes of Action" are not numbered. Nevertheless, the section alleging a claim under the ADEA alleges that Plaintiff was de-commissioned and not promoted because of her age. (Am. Compl. ¶¶ 40-41.) Other portions of the complaint address those same factual circumstances. (Am. Compl. ¶¶ 15, 22-23.) Upon a collective reading of these allegations, Plaintiff has failed to plead facts to support an age discrimination claim under the THRA or ADEA. Although Plaintiff vaguely references Sgt. Irvin, who was younger than her, being "groomed for the Lieutenant position," Plaintiff also alleges that the person ultimately promoted over her—Sgt. Houston Taylor, not Sgt. Irvin—*is older than her*. (Am. Compl. ¶¶ 23, 41.) In other words, the "younger" employee was not promoted either. As a result, Plaintiff has not established that her failure to be promoted resulted from someone younger than her being treated more favorably, *i.e.*, a necessary element of her claim.

Finally, the section of Plaintiff's complaint alleging an ADEA claim also alleges that Plaintiff was "subsequently suspended and demoted for no fault of her own." (Am. Compl. ¶ 40.) But again, Plaintiff alleges no facts to support a finding that she was treated differently than someone younger than her in that regard.

For each of these reasons, Plaintiff's age discrimination claims under the ADEA and THRA should be dismissed.

14

##### 5. *Plaintiff Satisfies None of the Statutory Elements of the CFAA.*

DeSoto also fails to state a claim against the Metropolitan Government under the CFAA, 18 U.S.C. § 1030. In relevant part, the CFAA provides that a person violates its provisions when he or she "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains–

> (A) information contained in a financial record of a financial institution, or of a card issuer as defined in section 1602(n) of title 15, or contained in a file of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.);
>
> (B) information from any department or agency of the United States; or
>
> (C) information from any protected computer."

18 U.S.C. § 1030(a)(2)(A-C). The statute defines a "protected computer" as one:

> (A) exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or
>
> (B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

18 U.S.C. § 1030(e)(2)(A-B).

Here, DeSoto asserts a claim under the CFAA concerning a device that is not even her personal device. *See* Motion filed in Civil Service Commission proceedings at 1, attached hereto as Exhibit 1 (referencing the Blackberry as "the BlackBerry used by Sgt. DeSoto while she served as an officer for Park Police.") [5] But there is nothing in the CFAA to indicate that it grants

---

[5] The attached motion was filed in the civil service proceeding and thus is a public record. A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment. *Lynch v. Leis*, 382 F.3d 642, 648 n. 5 (6th Cir. 2004); *Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th

15

a private right of action to someone concerning an employer-issued BlackBerry. Further, the Amended Complaint is devoid of any allegations to support the notion that "DeSoto's BlackBerry," even if it belonged to her personally, meets the definition of a "protected computer" under the statute. The BlackBerry is certainly not alleged to have been exclusively for the use of a financial institution, nor is it alleged to be a device affecting interstate or foreign commerce or communication. Accordingly, DeSoto's attempt to bring a private cause of action under the CFAA fails because she has not pleaded sufficient facts to show that she has a property interest in the BlackBerry device at issue or that the device is a "protected computer" under the CFAA.

Even more importantly, even if DeSoto had met the other statutory definitions to seek relief under the CFAA, the statute itself expressly limits the civil actions that can be brought pursuant to it.

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. *A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses [subclause] (I), (II), (III), (IV), or (V)* of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

---

Cir. 2001). Further, if extrinsic materials merely "fill in the contours and details" of a complaint, they add nothing new and may be considered at the motion to dismiss stage. *Yeary v. Goodwill Indus. Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). Here, given the multitude of references to "DeSoto's Blackberry" made in the Amended Complaint, it certainly fills in the contours to show that this device is actually a Metro-provided phone used by DeSoto in her employment, rather than a personal cell phone confiscated from her as part of her decommissioning.

18 USCS § 1030(g) (emphasis added); *see also WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 201 n.1 (4th Cir. 2012) (noting that "[m]aintenance of a civil action requires one of the factors outlined in § 1030(c)(4)(A)(i)(I)-(V)"). These referenced "subclauses" are set forth in 18 U.S.C. § 1030 (c)(4)(a)(i) and deal with the following conduct: (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value; (II) the modification or impairment, or potential modification or impairment, of the medical *ex*amination, diagnosis, treatment, or care of 1 or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety; (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security. DeSoto provides no well-pleaded facts that any "tampering" with the BlackBerry device fits into any of these five categories.

More specifically, DeSoto's Amended Complaint does not state a claim under the CFAA because she has not alleged that she has suffered losses of at least $5000. *See e.g., WEC Carolina*, 687 F.3d at 201 n.1. Further, there are certainly no allegations that any "accessing" of DeSoto's BlackBerry resulted in either: (1) the modification or impairment of medical examination or diagnosis; (2) physical injury to any person; (3) a threat to public safety, or (4) damage to a computer used by the United States. Because these five categories constitute the only situations in which a civil claim under the CFAA can be pursued—categories into which Plaintiff's pleadings simply do not fit—Plaintiff's claim under the CFAA should be dismissed.

17

## B. A NUMBER OF PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED.

### 1. The Metropolitan Government Has Not Waived Its Immunity for Intentional Infliction of Emotional Distress Claims.

The Metropolitan Government is a governmental entity subject to the provisions of the TGTLA. Hence, the Metropolitan Government is protected by the governmental immunity provided by the TGTLA. TENN. CODE ANN. § 29-20-201. The general rule in Tennessee is that municipalities are immune from suit, subject only to certain specified exceptions under the TGTLA. To that end, any plaintiff alleging that the circumstances of a particular case fall under one of the exceptions to immunity must bring his or her claim "in strict compliance with the terms" of the Act. TENN. CODE ANN. § 29-20-201(b). Further, it is well settled that the TGTLA is in derogation of the common law and, thus, must be strictly construed in favor of the governmental entity. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 83 (Tenn. 2001); *Hughes v. Metro. Gov't of Nashville & Davidson County*, 340 S.W.3d 352, 361 (Tenn. 2011).

The TGTLA removes the Metropolitan Government's immunity from suit for certain acts on the part of its employees. The removal of immunity, however, is subject to specific exceptions, including where the alleged injury arises out of what is known as the intentional tort exception. *Baines v. Wilson Co.*, 86 S.W.3d 575, 580 (Tenn. Ct. App. 2002) (citing TENN. CODE ANN. § 29-20-205(2)). The intentional tort exception to liability includes injuries that arise out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, ***infliction of mental anguish***, invasion of right of privacy, or civil rights." TENN. CODE ANN. § 29-20-205(2) (emphasis added). The phrase "infliction of mental anguish" in this provision applies to the tort of intentional infliction of emotional distress. *Sallee v. Barrett*, 171 S.W.3d 822, 831 (Tenn. 2005). In fact, in *Harrison v. City of Dickson*, No. 3:11-cv-1044, 2013 U.S. Dist.

18

LEXIS 52247 (M.D. Tenn. Apr. 11, 2013) (Nixon, J.), this Court dismissed an intentional infliction of emotional distress claim on these grounds. *Id.* at *45 (copy attached).

Simply stated, the Metropolitan Government has not waived its immunity for claims arising out of "infliction of mental anguish" under the TGTLA. *Id.* As a result, Plaintiff's claim for intentional infliction of emotional distress against the Metropolitan Government should be dismissed.[6]

### 2. Plaintiff's "Negligence" Claim Arises Out of Civil Rights and Must Be Dismissed.

As outlined above, the intentional tort exception to liability for a governmental entity under the TGTLA includes injuries that arise out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or ***civil rights***." TENN. CODE ANN. § 29-20-205(2) (emphasis added). Numerous U.S. district courts in Tennessee have dismissed state-law claims on the basis of this civil rights exception. *E.g.*, *Harrison*, 2013 U.S. Dist. LEXIS 52247, at *45 (Nixon, J.); *Eibel v. Melton*, 904 F. Supp. 2d 785, 812 (M.D. Tenn. 2012) (Sharp, J.); *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 852-53 (E.D. Tenn. 2011). Likewise, U.S. district courts in Tennessee have recognized the "civil rights exception" in the context of employment discrimination claims arising under federal employment discrimination statutes such as Title VII. *E.g.*, *Targonski v. City of Oak Ridge*, No. 3:11-cv-269, 2012 U.S. Dist. LEXIS 99693, at *31 (E.D. Tenn. July 18, 2012) ("Each of plaintiff's negligence claims can only be read as being based on the alleged Title VII violations, and the negligence claims thus 'directly flow from' her civil rights allegations.") (copy attached);

---

[6] Even if the Metropolitan Government had waived its immunity, Plaintiff has not alleged any conduct sufficiently outrageous in character and extreme in degree as to be "beyond all bounds of decency" to support a claim for intentional infliction of emotional distress. *Goldfarb v. Baker*, 547 S.W.2d 567, 569 (Tenn. 1977).

19

*Hisel v. City of Clarksville*, 3:04-cv-924, 2007 U.S. Dist. LEXIS 15145, at *42 (M.D. Tenn. Mar. 2, 2007) (Echols, J.) (copy attached).

As evidenced by the litany of federal claims through which Plaintiff seeks to recover in this case and her failure to allege any allegations independent of those claims when alleging "negligent infliction of emotional distress," *see* Compl. ¶¶ 54-55 (merely incorporating other allegations by reference), Plaintiff's complaints concerning her employment all arise out of "civil rights." Because the Metropolitan Government has not waived its immunity under the TGTLA for such claims, Plaintiff's negligent infliction of emotional distress claim should be dismissed.

### 3. Plaintiff's Constructive Discharge Claim Fails.

Plaintiff also asserts a "common law" claim for "constructive discharge." Constructive discharge, however, is not a stand-alone common law cause of action and, instead, "requires a viable **underlying cause of action**." *Phillips v. Interstate Hotels Corp. #L07*, 974 S.W.2d 680, 687 (Tenn. 1998). Because Plaintiff has failed to plead the purported proper basis for any "constructive discharge" claim, in violation of the basic pleading requirements under *Twombly* and *Iqbal*, that claim should be dismissed.

Moreover, even if Plaintiff had properly pleaded the basis for her "constructive discharge" claim, insofar as it is based in age discrimination, it should be dismissed. A plaintiff's failure to state a proper cause of action under the THRA is fatal to a constructive discharge claim based in the THRA. *Phillips*, 974 S.W.2d at 687 ("The plaintiff's failure to state a cause of action under the THRA is fatal to his constructive discharge claim."). Because DeSoto's THRA claim for age discrimination fails on the pleadings as outlined in Section III(A)(3) above, any constructive discharge claim alleging age discrimination fails as well.

20

### 4. Metro Code Section 11.20.130 Does Not Create a Private Right of Action.

Plaintiff next asserts a cause of action for "sexual orientation" discrimination under Metro Code Section 11.20.130. Metro Code Section 11.20.130, however, does not create a private right of action. Thus, this claim should be dismissed as well.

The plaintiff asserting a cause of action arising from a statute has the burden of establishing that the statute creates a private right of action. *Premium Fin. Corp. of Am. v. Crump Ins. Servs.*, 978 S.W.2d 91, 93 (Tenn. 1998). The mere fact that a plaintiff alleges a statutory violation does not determine whether the plaintiff has a private right of action under the statute. *Gillespie v. City of Memphis*, No. W2007-01786-COA-R3-CV, 2008 Tenn. App. LEXIS 340, at *26 (Tenn. Ct. App. June 5, 2008) (quoting *Johnson v. City of Memphis*, Nos. 00-2608, 04-2017, 04-2013, 2006 U.S. Dist. LEXIS 97566, at *50 (W.D. Tenn. Dec. 28, 2006), *rev'd on other grounds*, *Ross v. City of Memphis*, 423 F.3d 596, 606 (6th Cir. 2005)) (copies attached). Moreover, only the legislature, and not the court, may create a cause of action under a statute. *Id.*

In determining whether a statute creates a private right of action, a court should ask "whether the legislature intended in passing the statute to provide a private right of action." *Johnson*, 2006 U.S. Dist. LEXIS 97566, at *51 (quoting *Ergon, Inc. v. Amoco Oil Co.*, 966 F. Supp. 577, 583 (W.D. Tenn. 1997)). In so doing, "unless the legislative intent to create a private right of action 'can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Id.* (quoting *Ergon*, 966 F. Supp. at 584 (quoting *Thompson v. Thompson*, 484 U.S. 174 (1988)).

There is no indication in the Metro Code—Section 11.20.130 or otherwise—that the Metro Council intended to create a private right of action for sexual orientation discrimination. The "Purpose" of Chapter 11.20 of the Metro Code states as follows:

This chapter is enacted in order to secure for all individuals within the area of the metropolitan government freedom from discrimination because of race, color, religion, national origin, disability or sex in connection with employment and thereby protect their interest and personal dignity.

Metro Code of Ordinances Section 11.20.10 (certified copy attached to Motion as Exhibit 2).[7] Nothing in that language indicates that this Chapter of the Metro Code intends to create a cause of action for damages for any employee of the Metropolitan Government who contends that its provision were violated. Moreover, the language of Section 11.20.130 is equally unhelpful to Plaintiff, stating only that sexual orientation discrimination is prohibited against Metropolitan Government employers, and not that employees may recover damages in a lawsuit arising from purported discrimination. Metro Code Section 11.20.130 (certified copy attached to Motion as Exhibit 3). Other provisions in Chapter 11.20 provide an administrative process through which employees, like DeSoto, may file complaints, which will in turn be investigated. Metro Code Section 11.20.110 (certified copy attached to Motion as Exhibit 4). But in the end, nothing in any of the provisions at issue establish that Plaintiff has a private right of action for damages for any purported violations of the ordinance. Consequently, Plaintiff's claim under Metro Code Section 11.20.130 should be dismissed.

> **5.    *The TPCCA Provides No Cause of Action to Plaintiff, and She Has Not Alleged Violation of Any of Its Provisions.***

Plaintiff also asserts a claim under the Tennessee Personal and Commercial Computer Act, Tenn. Code Ann. §§ 39-14-601 *et seq.* Plaintiff's Amended Complaint fails to outline which provision of the TPCCA was violated. Despite this, Plaintiff has not pleaded facts sufficient to support a claim under any provision of the TPCCA.

---

[7] The Metro Code, including Chapter 11.20, is available for review in full at http://library.municode.com/index.aspx?clientId=14214.

22

First, even if DeSoto could allege facts to support a violation of the TPCCA, there is no cause of action available to her. Under the TPCCA, "Any person ***whose property or person is injured*** by reason of a violation of any provision of this part may file a civil action and recover for any damages sustained and the costs of the civil action." Tenn. Code Ann. § 39-14-604(a) (emphasis added). But the Blackberry that Plaintiff alleges was improperly accessed was not her property. Instead, as she acknowledges in other public filings, the Blackberry she asserts was improperly accessed was issued to her by the Metropolitan Government. Thus, DeSoto cannot bring a viable claim pursuant to Tenn. Code Ann. § 39-14-604(a).

Moreover, even if DeSoto could bring a claim under the TPCCA, she has not alleged facts to support a violation under any of its provisions. First, someone violates Tenn. Code Ann. § 39-14-601(a) only where the person accesses a computer, telephone system, etc. for financial gain or to obtain property or services for oneself, or creates or alters a financial instrument. There are no facts alleged in the Amended Complaint to support such a claim. Second, Plaintiff cannot establish a violation of Tenn. Code Ann. § 39-14-601(b) because it prohibits accessing various types of electronic data "without authorization." Again, the Blackberry at issue did not belong to Plaintiff DeSoto, and there are no other facts to support that the Metro-issued Blackberry was accessed "without authorization." Finally, Tenn. Code Ann. § 39-14-601(c) prohibits anyone from "receiv[ing], conceal[ing], us[ing], or aid[ing] another in receiving, concealing, or using any proceeds resulting from a violation of either subsection (a) or subdivision (b)(2) . . . " Plaintiff's Amended Complaint alleges no facts to support that this provision was violated.

Because there is no cause of action available to Plaintiff under Tenn. Code Ann. § 39-14-604 and she has not alleged facts to support a claim under the TPCCA, that claim should be dismissed.

23

### 6. **Plaintiff Has No Private Right of Action Under the Tennessee Constitution.**

Plaintiff also asserts claims alleging that her rights to freedom of speech, association, and privacy under the Tennessee Constitution were violated and that those violations caused her to "suffer[ ] damages as a result." (Am. Compl. ¶¶ 27-28, 31-32.)[8] The Tennessee Constitution, however, does not provide a private right of action for damages arising from purported civil rights violations. *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (citing *Lee v. Ladd*, 834 S.W.2d 323 (Tenn. Ct. App. 1992)). Accordingly, Plaintiff's claims alleging Tennessee Constitution violations should be dismissed.

## IV.    <u>CONCLUSION</u>

The majority of Plaintiff's claims against the Metropolitan Government should be dismissed. First, Plaintiff's federal claims brought pursuant to Section 1983, the ADEA (and the co-extensive age discrimination claim under the THRA), and the CFAA should be dismissed because Plaintiff has not alleged facts to support such claims. Second, many of Plaintiff's state law claims should be dismissed as well. Specifically, the Metropolitan Government has not waived its immunity for intentional infliction of emotional distress or negligent infliction of emotional distress claim arising out of civil rights. Additionally, neither the Metro Code of Ordinances § 11.20.130 nor the Tennessee Constitution create a private right of action for Plaintiff. Finally, Plaintiff fails to state a viable claim under the TPCCA. For each of these reasons, the Metropolitan Government requests that the Court dismiss all of these claims pending against it.

---

[8] Plaintiff also asserts a Tennessee Constitution claim alleging search and seizure violations, but like the Fourth Amendment claim, that claim is not alleged against this Defendant. (Am. Compl. ¶¶ 65-66.)

24

Respectfully Submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
Saul Solomon (#11689) Director of Law

/s/ Allison L. Bussell
Keli J. Oliver (#21023)
Derrick C. Smith (#13961)
Allison L. Bussell (#26538)
Assistant Metropolitan Attorney
P.O. Box 196300
Nashville, TN  37219
(615) 862-6341

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing was served via the court's CM/ECF system
to the following:

Ben M. Rose                             Kevin C. Klein
The Law Offices of Ben M. Rose, PLLC    The Klein Law Office, PLLC
P.O. Box 1108                           814 Church Street, Suite 202
Brentwood, TN 37204                     Nashville, TN 37203

Charles J. Mataya                       Rebecca C. Blair
John P. Rodgers                         The Blair Law Firm
Bradley Arant Boult Cummings LLP        5214 Maryland Way, Suite 207
1600 Division Street, Suite 700         Brentwood, TN 37027
Nashville, TN 37203

on this 2nd day of May, 2014.

/s/ Allison L. Bussell
Allison L. Bussell

25